**Jon A. POTCINSKE, Appellant,**

v.

**McDONALD PROPERTY INVESTMENTS, LTD., Appellee.**

**No. 01–06–00718–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 15, 2007.

Rehearing Overruled Aug. 30, 2007.

Tracy J. Willi, Willi Law Firm, P.C., Austin, James R. Jones, Houston, for appellant.

Mark K. Knop, Houston, for appellee.

Panel consists of Justices KEYES, HIGLEY, and WILSON.*

---

* The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of Texas

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Jon A. Potcinske, claims that he and appellee, McDonald Property Investments, Ltd., (McDonald Property), entered into a contract in which McDonald Property agreed to sell 2.1 acres of real property to Potcinske. When McDonald Property did not convey the property, Potcinske filed suit alleging breach of contract and seeking specific performance.

In two issues, Potcinske appeals the trial court's judgment ordering that he take nothing on his claims. Potcinske contends that (1) "the trial court erred by finding that no contract was formed" and (2) "the trial court erred by finding that the contract lacked a property description."

We affirm.

## Background

McDonald Property owns 2.1 acres of real property located on Jones Road in Houston ("the Jones Road property" or "the property"). David McDonald, principal of McDonald Property, hired Clay & Company, a broker and auctioneer, to act as the selling agent for the Jones Road property. Clay & Company listed the property for auction along with 24 other properties. In the auction brochure, the listing for the Jones Road property provided, "High bid subject to Seller acceptance." Potcinske was the highest bidder for the property at the auction on April 27, 2000, bidding $225,000.

Potcinske made a written offer on the property by signing and delivering to Clay & Company an earnest money contract form entitled "Unimproved Property Commercial Contract." The contract form provided, "CONTRACT AS OFFER: The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts by 5:00 p.m. ... on May 8, 2000 the offer will lapse and become null and void."[1] The contract form listed the closing date for the sale of the property as May 30, 2000.

Under the heading of "financing," the contract form listed three financing options: (1) third-party financing, (2) assumption, and (3) seller-financing. Potcinske initialed the seller-financing option, indicating that the sales price for the property would be financed by McDonald Property.[2] The seller financing section initialed by Potcinske specifically provides as follows:

> 4. FINANCING: Buyer will finance the portion of the sales price under Paragraph 3B as follows: *(Check all that apply.)*
>
> . . . .
>
> C. *Seller Financing:* The delivery of the promissory note and deed of trust from Buyer to Seller under the terms of the attached Financing Addendum in the amount of $202,500.[3]

Clay & Company forwarded the contract form to David McDonald for his approval and signature. After receiving the written

---

at Houston, participating by assignment.

1. The deadline for acceptance was originally May 4, 2000. However, David McDonald later agreed to extend the deadline to May 8, 2000.

2. Potcinske later testified at trial that he initialed the provision because he was told by Clay & Company to do so if he wanted to

keep seller financing open as a financing option.

3. Section 3 of the earnest money contract provided that $22,500 would be paid in cash at closing, leaving $202,500 to be financed. At this point, the financing addendum was not attached.

offer, David McDonald revised the survey terms, attached a seller-financing addendum, signed the contract form, and delivered it back to Clay & Company.

On May 4, 2000, a representative of Clay & Company forwarded the revised contract form and financing addendum to Potcinske. An accompanying cover memorandum noted the changed survey term and stated that "the seller has attached the Seller Financing Addendum for your signature." The cover memorandum also requested Potcinske to initial the revised survey term and "sign the financing addendum."

Potcinske did not approve the change to the survey term and did not sign the financing addendum. Rather, on May 8, 2000, Potcinske sent correspondence to Clay & Company in which he stated,

> [T]he matter that was changed by the seller for the survey I re-amended to state that I could have their [sic] existing survey ordered at my expense.[4] Also, I have inquired [sic] my bank and a few others as to the financing, as the amortization terms and rates may be more attractive. The financing disclosure will not be signed until I can determine which way would be most beneficial, especially when considering securing a bank loan for construction financing.

Clay & Company obtained bids for a survey, but could not reach David McDonald to obtain approval for the survey. No survey was performed on the property, and Potcinske never signed the financing addendum. After 5 p.m. on May 30, 2000, David McDonald left a voice message for Clay & Company stating that he considered "the deal to be dead" and offering to return Potcinske's earnest money.

On April 27, 2004, Potcinske sued McDonald Property for breach of contract, alleging that he had an enforceable contract with McDonald Property to purchase the Jones Road property. He alleged that McDonald Property breached that agreement when it did not convey the property. Potcinske sought specific performance, requesting an order compelling the transfer of the Jones Road property to him.

The case was tried to the bench. At trial, McDonald Property contended that no contract existed between it and Potcinske. McDonald Property asserted that there had been no "meeting of the minds" because the parties had not agreed on all material terms of the contract, specifically the seller-finance and survey terms. In contrast, Potcinske asserted that neither the survey term nor the seller-financing terms were "material" to the formation of the contract. According to Potcinske, McDonald Property accepted his initial written offer when David McDonald signed the contract form.

Following a bench trial, the trial court signed a judgment ordering (1) Potcinske take nothing on his claims against McDonald Property, (2) McDonald Property to return Potcinske's earnest money, and (3) Potcinske to release all *lis pendens* on the property. At Potcinske's request, the trial court filed findings of fact and conclusions of law.

Regarding contract formation, the trial court filed the following pertinent "conclusions of law":

1. As the auction materials made clear that the high bid was subject

---

4. At some point, a revision was made to the survey provision indicating that McDonald Property would reimburse Potcinske for one-half of the survey cost at closing. It is un- clear from the record who made this revision, when it was made, or whether it was ultimately agreed to by the parties.

to seller acceptance, the auction was not an offer to sell.

2. The initial contract signed by Potcinske was an offer to purchase the property on Jones Road.

3. The seller-financing term is a material term of the contract.

4. The survey term is a material term of the contract.

5. McDonald did not accept Potcinske's offer to purchase the property on Jones road; acceptance must not change the terms of the contract.

6. Instead, McDonald made a counter-offer to sell the Jones Road property with a different survey term.

7. Potcinske did not accept McDonald's offer to sell, again, because an acceptance must not change the terms of the contract.

8. While Potcinske may have accepted the new survey term, he simultaneously changed or declined to proceed with the seller-financing term.

9. During negotiations, McDonald never agreed to a cash transaction.

10. In fact, Potcinske never actually offered to purchase the property for cash; he simply purported to hold his options open.

11. Thus, the parties did not have a meeting of the mind [sic].

12. The parties did not form an agreement for the sale/purchase of the real estate located on Jones Road.

The trial court also concluded that, "[e]ven if the parties had agreed upon all material terms of the real estate contract, the contract fails for the lack of an adequate property description."

On appeal, Potcinske challenges the trial court's conclusions relating to contract formation and regarding whether the contract contained an adequate property description.

## Contract Formation

In his first issue, Potcinske asserts, "The trial court erred by finding that no contract was formed." To support this contention, Potcinske first challenges the trial court's conclusion of law that the seller-financing term is a material term of the contract. As mentioned, the trial court concluded that there was no "meeting of the minds," in part, because the parties could not agree on the financing term. Potcinske does not challenge the sufficiency of the evidence to support the findings of fact underlying this conclusion of law; rather, Potcinske challenges the trial court's application of the law to the undisputed facts.

### A. Standard of Review

We review a trial court's conclusions of law de novo as legal questions. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996); *McDermott v. Cronin*, 31 S.W.3d 617, 623 (Tex. App.-Houston [1st Dist.] 2000, no pet.). In performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex.1998). To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex.App.-Houston [14th Dist.] 1990, no writ); *see Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P.*, 981 S.W.2d 916, 919 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

### B. Seller Financing: A Material Term

Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's

consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Roman v. Roman*, 193 S.W.3d 40, 50 (Tex.App.-Houston [1st Dist.] 2006, pet. filed); *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex.App.-Houston [14th Dist.] 2002, no pet.). "Meeting of the minds" describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract. *Weynand v. Weynand*, 990 S.W.2d 843, 846 (Tex.App.-Dallas 1999, pet. denied). Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992).

Here, Potcinske does not dispute that he and McDonald Property failed to have a meeting of the minds regarding the seller-financing term. Rather, he contends that such failure does not preclude enforcement of the contract because the seller-financing term was not a material term on which mutual assent was required to form an enforceable contract.

We begin our analysis by discussing case law, including our own, in which a financing term was determined to be a material term with respect to formation of a contract to sell real property. In *Smith v. Thorne*, we held that the evidence was sufficient to support the trial court's findings that the parties had never agreed on the financing method for the real estate transaction at issue and had no meeting of the minds regarding financing. No. 01–01–01241–CV, 2003 WL 21357297, *3 (Tex.App.-Houston [1st Dist.] June 12, 2003, no pet.) (mem. op.). Based on those facts, we upheld a challenged conclusion of law providing that "[t]he parties did not reach agreement on a material term of the contract: financing." *Id.*

In *Garrod Invs, Inc. v. Schlegel*, the court was presented with the issue of whether a real estate contract satisfied the Statute of Frauds. 139 S.W.3d 759, 764 (Tex.App.-Corpus Christi 2004, no pet.). There, the buyer changed the financing terms of the signed, written offer made by the property's seller. *Id.* In this regard, the court held, "These changes altered the financing provisions of the sales agreement, which are material terms." *Id.* (citing *Lloyd v. Holland*, 659 S.W.2d 103, 105 (Tex.App.-Houston [14th Dist.] 1983, no writ.) (holding that method of payment in that case was material term in contract for sale of real property) and *Smith*, 2003 WL 21357297 at *2 (discussed above)). Because the financing terms were material, the *Garrod Investments* court held that the change made to the financing terms constituted a counter-offer, which was never accepted by the seller. *Id.* at 765. Thus, the contract did not satisfy the requirements of the Statute of Frauds. *Id.*

■ Here, to support his position that financing was not a material term to the formation of the contract, Potcinske relies on *Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.). In that real estate case, it was undisputed that the buyer and seller had entered into a contract for the purchase of the subject property and had agreed on the financing terms. *See id.* at 738–39. The parties agreed that the buyer would assume the seller's note on the property. *Id.* at 738. The buyer was unable to assume the note, but secured alternative financing to close the transaction. *Id.* at 739. Because the buyer failed to assume the note as agreed, the seller refused to convey the property, and the buyer sued for specific performance. *Id.* The seller then obtained a summary judgment against the buyer based on the buy-

er's breach, i.e., failure to assume the note. *Id.* at 738.

The buyer appealed. The court of appeals reversed, holding, under the facts of that case that, the buyer's failure to comply strictly with the financing terms was not a material breach of the already existing contract. *Id.* at 740.

As pointed out by McDonald Property, *Advance Components* is distinguishable from the instant case. The court in *Advance Components* determined whether the buyer's failure to perform agreed upon financing terms was a material breach of an already formed contract. Here, we must determine whether a financing term is a material term in the context of contract formation. We agree with McDonald Property that different considerations come into play when determining the materiality of a finance provision in each context. Thus, we do not find the holding of *Advance Components* on point. In contrast, *Garrod Investments* and *Smith* involved the determination of whether financing provisions were material in the context of forming a real estate contract; accordingly, we determine that the holdings of *Garrod Investments* and *Smith* are instructive and support a conclusion that the seller-financing term in this case is a material term.

In addition, we note that the Supreme Court of Texas has instructed, "Each contract should be considered separately to determine its material terms."[5] *T.O. Stanley Boot Co.*, 847 S.W.2d at 221. The Fifth Circuit Court of Appeals has recognized that, under Texas law, essential or material terms are those that parties would reasonably regard as vitally important elements of their bargain. *Neeley v. Bankers Trust Co.*, 757 F.2d 621, 628 (5th Cir.1985).

In this case, the record reflects that whether the purchase would be seller financed was an important and material element of the bargain as manifested by the parties' focus on that provision during negotiations. In his written offer, Potcinske initialed the seller-financing option and only that option. When responding to the offer, David McDonald included the financing addendum and requested Potcinske to sign it. In turn, Potcinske responded by refusing to sign the addendum until he could determine which type of financing would "be most beneficial" to him.

Based on the facts of this case, we hold that the trial court properly concluded that the seller-financing term was a material term.

We overrule Potcinske's first issue to the extent that he contends that the trial court erred by concluding that the seller-financing term was a material term.[6]

## Conclusion

We affirm the judgment of the trial court.

---

**5.** Similarly, *Advance Components* recognizes, "The determination of whether a breach is a material breach of the contract must necessarily turn on the facts of each case." *Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737, 739 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.).

**6.** Because this subsidiary conclusion supports the trial court's ultimate conclusions that there was no meeting of the minds and no enforceable contract between the parties, we do not address Potcinske's other contentions challenging the trial court's judgment found in the remainder of issue one and in issue two.