**Opinion issued July 2, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00916-CV

_____

**MICHAEL ROBINSON, CAROL ROBINSON AND THE 2000 HORIZON COMPANY A/K/A LIGHTHOUSE ENERGY SERVICE, CO., Appellants**

**V.**

**WILLIAM CASON AND BLACK SIGMA, LLC, Appellees**

---

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 59473**

---

## MEMORANDUM OPINION

In this dispute between business partners, we determine whether the trial court erred in entering summary judgment to enforce a settlement agreement. Michael and Carol Robinson and the 2000 Horizon Company a/k/a Lighthouse

Energy Service Company ("Horizon"), appeal from the summary judgment in favor of William Cason and Black Sigma, LLC. We conclude that the trial court properly entered summary judgment enforcing the settlement agreement, and we find no error in the remaining issues on appeal. We therefore affirm.

**Background**

Michael Robinson founded Horizon and is its majority shareholder. Cason is a minority shareholder in Horizon. Cason and Robinson together serve on Horizon's board of directors.

In September 2010, Cason sued Robinson, alleging that Robinson had misused corporate funds for personal gain, forged Cason's signature on promissory notes, and concealed his actions from the board of directors. Cason brought claims individually and on behalf of Horizon, including claims for breach of fiduciary duty, fraud, investor oppression, and theft. The lawsuit (cause number 59473) was assigned to the 23rd District Court.

While the lawsuit was pending, a property dispute arose between Cason and Robinson. Robinson had purchased property on behalf of Horizon in 2004 by borrowing $475,000.00 from a lender named John Benkenstein. In September 2010—around the time Cason sued Robinson—Cason purchased Robinson's promissory note, vendor's lien, and deed of trust from Benkenstein. As assignee, Cason obtained Benkenstein's rights under the note, including any claims

2

Benkenstein held against Robinson and the right to foreclose on the underlying property in the event of default. Robinson's promissory note contains the following provision regarding notice of acceleration: "[Robinson] and each surety, endorser and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest and notice of protest . . . ."

After Cason acquired the note, he notified Robinson that he had purchased it and that Robinson had defaulted on it by failing to maintain proper insurance on the property, repay taxes paid by the lender, and obey restrictive covenants imposed on the land. Cason gave Robinson thirty days to cure the defaults. In reply, Robinson tendered a check in the amount of $9,024.00, maintaining that the payment cured his defaults.

In November 2010, Cason assigned Robinson's promissory note to Black Sigma—a limited liability company in which Cason is the managing member. Black Sigma accelerated Robinson's promissory note and demanded payment. Black Sigma contended that Robinson remained in default by failing to timely pay property taxes, repay taxes paid by the previous lender, and obey restrictive covenants. Black Sigma enclosed the appointment of a substitute trustee and notice of the trustee's sale along with the notice of acceleration.

After Cason transferred the note to Black Sigma, Robinson counterclaimed in the suit for breach of fiduciary duty, tortious interference, defamation, and intentional infliction of emotional distress. He contended that Cason had breached his fiduciary duties to Horizon and interfered with Horizon's business by purchasing the promissory note and assigning it to Black Sigma. On the same day that Robinson filed his counterclaims, he moved for a temporary restraining order and injunction to prevent Black Sigma from foreclosing on the property. His motion alleged that Cason operated Black Sigma as an alter ego. All of the parties agree that the trial court denied Robinson's motion, but the record does not include the disposition.

After the 23rd District Court denied Robinson's motion, he petitioned the 149th District Court (cause number 61122) for a TRO, temporary injunction, and permanent injunction to prevent the substitute trustee's foreclosure sale. The 149th District Court enjoined the sale and, after discovering the pending action before the 23rd District Court, signed a handwritten order that both cases be presented to the 23rd District Court to determine whether consolidation was proper. The handwritten order permitted the substitute trustee to accept bids at the foreclosure sale but left unchanged the temporary injunction against any transfer of the deed until the 23rd District Court ruled on the matter.

4

The 23rd District Court consolidated cause number 61122 in the 149th District Court into cause number 59473 in the 23rd District Court; the court's order consolidating the cases vacated the TRO and handwritten order entered by the 149th District Court. The substitute trustee subsequently conveyed the deed to the property to the highest bidder at the foreclosure sale, Black Sigma.

In March 2011, Robinson filed third-party claims against Black Sigma to quiet title and for wrongful foreclosure and breach of contract. Robinson alleged that he had timely cured all defaults under the promissory note, Black Sigma had failed to provide adequate notice of the trustee's sale, and the sale violated the 149th District Court's TRO. Robinson moved for summary judgment; Black Sigma filed a cross-motion for summary judgment, asserting that the TRO did not apply to void the sale, and Black Sigma properly exercised its rights as assignee of the promissory note. The trial court signed an interlocutory order granting summary judgment in favor of Black Sigma in May 2011.

During this time, Cason's suit for breach of fiduciary duty remained pending before the 23rd District Court, along with Robinson's counterclaims. In late December 2010, Robinson appeared for his deposition in a separate lawsuit. Cason also appeared at the deposition.

During the course of the deposition, Cason and Robinson reached a settlement. They dictated its terms to the court reporter, who transcribed them in an

5

independent volume labeled with the 59473 cause number. Generally, the settlement requires Robinson to acknowledge that Black Sigma holds title to the disputed property and convey two tracts of land, their legal descriptions set forth in an attached exhibit, to Cason. In exchange, Cason agreed to convey his outstanding Horizon stock to Robinson and resign from any position he holds with Horizon. Cason also agreed to let Robinson remain on the foreclosed property for a period of six months, conditioned on his maintaining insurance on the property and running his company in a commercially reasonable manner during that occupancy.

The parties mutually agreed to exchange standard releases and to formalize the dictated provisions in a formal settlement agreement. Further, they agreed that the parties would bear their own attorney's fees and costs in connection with the litigation. They expressly referenced the consolidated cause in agreeing that "[a]ll the claims are dismissed against all entities."

The dictated settlement also provides that, in the case of any dispute among the parties concerning the interpretation of the agreement—including the meaning of any ambiguous term or the wording of the releases—the 23rd District Court would be the ultimate arbiter, so that the settlement "is not an agreement to make an agreement, but an absolute full, final, complete agreement" resolving all claims between Cason and Robinson."

In February 2011, Cason moved to enforce the settlement agreement and for judgment on all claims. Cason attached a copy of the December 2010 deposition transcript to his motion along with an unsigned draft of a written settlement memorializing the December 2010 agreement. Cason then moved for summary judgment, asking the trial court to enforce the settlement agreement against Robinson. Cason again tendered a copy of the deposition transcript to the trial court, along with the court reporter's notarized acknowledgment of the settlement agreement and a copy of a substitute trustee's deed. Cason included a copy of his lawyer's affidavit certifying the above documents.

In response, Robinson maintained that the pleadings did not support Cason's motion for summary judgment because Cason had not amended his pleadings to include a breach-of-contract claim. Alternatively, Robinson contended that the settlement was unenforceable because it did not comply with Rule 11, lacked material terms to be enforced as a contract, or that an affirmative defense (mistake, fraud, or duress) prevented its enforcement. Robinson supported his motion with affidavits, including an affidavit from his attorney at the December 2010 deposition. His attorney averred that Cason and Robinson had agreed to a settlement in principle during the deposition, but that not all of the terms of the settlement were included in the reporter's record—specifically, it omitted a promise by Cason to pay money to Robinson. According to Robinson's attorney,

the contract term ordering the payment was reserved for a final, written agreement in order to permit the parties time to arrange financial details. Robinson also tendered his affidavit. Robinson averred that he suffered from a chronic illness, he assented to the settlement only after a lengthy deposition, and he agreed to it based on promises that additional material terms would be memorialized in a document drafted after the deposition. Finally, Robinson attached the affidavit of an individual connected with Black Sigma, who averred that Cason had told him that he promised to pay Robinson "a lump sum of $250,000.00, an annuity of $5,000.00 per month for twenty years, and . . . health insurance coverage for one year" in exchange for the settlement. In reply, Cason objected to the affidavits and amended his petition to allege breach of the settlement agreement; the trial court declined to consider the amended petition because it was not timely filed.

In August 2011, Robinson moved to recuse the trial judge, citing his social relationship with Cason's attorney and a number of adverse rulings. After a hearing, the presiding judge of the administrative district denied Robinson's motion.

In September 2011, the trial court entered summary judgment in favor of Cason, enforcing the settlement agreement reached at the December 2010 deposition.

## Discussion

8

## I.  Summary judgment enforcing the December 2010 Settlement Agreement

### A.  The trial court's summary judgment order conforms with the pleadings

As a preliminary matter, Robinson claims that proper pleadings do not support the September 2011 summary judgment, because Cason did not timely amend his petition to include a breach-of-contract claim.  Cason replies that his motion to enforce the settlement agreement provides sufficient notice of the contract claim.

Settlement agreements may be enforced as contracts, even when one party withdraws its consent to the settlement before judgment is entered on the agreement. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009); *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (West 2011) (settlement agreement is enforceable "in the same manner as any other contract"). The party seeking to enforce the agreement must pursue a separate breach of contract claim, which is subject to the normal rules of pleading and proof. *Mantas*, 925 S.W.2d at 658–59; *Padilla*, 907 S.W.2d at 462; *Ford*, 279 S.W.3d at 663.

A pleading for breach of contract must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including an allegation of a contractual relationship between the parties, and the substance of the contract

which supports the pleader's right to recover. *Bayway Servs., Inc. v. Ameri-Build Constr., L.C.*, 106 S.W.3d 156, 160 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Cadle Co. v. Castle*, 913 S.W.2d 627, 630–31 (Tex. App.—Dallas 1995, writ denied). An amended pleading, though, is only one may to raise a claim that a settlement agreement should be enforced as a contract: a motion seeking enforcement of a settlement agreement is sufficient to permit the entry of judgment enforcing the settlement, because it gives the nonmovant notice of the claim asserted and an opportunity to defend itself. *Bayway Servs.*, 106 S.W.3d at 160 (holding motion to enforce settlement agreement satisfied pleading requirements); *Neasbitt v. Warren*, 105 S.W.3d 113, 117 (Tex. App.—Fort Worth 2003, no pet.) (same). Thus, a motion that satisfies the general purpose of pleadings—which is to give the other party fair notice of the claim and the relief sought—is sufficient to allow the trial court to render judgment enforcing the settlement. *Bayway Servs.*, 106 S.W.3d at 160; *Neasbitt*, 105 S.W.3d at 117.

Cason moved to enforce the settlement agreement in February 2011. Cason's motion alleged that he had sent a document formalizing the transcribed terms to Robinson and that Robinson had failed to sign and return the document. Cason attached the December 2010 deposition transcript to his motion along with the unsigned settlement document he had sent to Robinson. Approximately three weeks later, Cason moved for final judgment, renewing his contention that the

10

December 2010 deposition transcript evidenced a settlement agreement. Cason asked the trial court to enter judgment in accord with the settlement agreement's terms and order that the parties execute the mutual releases provided for in the agreement.

Cason's motion to enforce the settlement agreement provided fair notice of his claim and the relief sought. *See Bayway Servs.*, 106 S.W.3d at 160. Cason proffered evidence of a settlement agreement between the parties, alleged that Robinson had disavowed the agreement, sought its specific performance, and requested a hearing on the motion. The motion therefore satisfies the general purposes of pleadings and is sufficient to permit the trial court to render judgment enforcing the settlement.

### B. Summary judgment in favor of Cason's enforcement claim

Robinson challenges the trial court's summary judgment order enforcing the terms of the December 2010 settlement. He contends that a deposition transcript does not comply with Rule 11 and, in the alternative, that a fact issue exists on whether the parties' agreement is otherwise enforceable as a contract. In reply, Cason maintains that the Rule 11 does not prohibit the trial court from enforcing the deposition transcript as a settlement agreement and that the agreement is enforceable under contract law.

11

### 1. Standard of review

We review de novo the trial court's grant of a motion for summary judgment. *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). To be successful, a motion under Texas Rule of Civil Procedure 166a(c) must establish that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). When a plaintiff moves for summary judgment on its own claim, the plaintiff must conclusively prove all essential elements of its cause of action. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). If the movant conclusively negates an element of each of the plaintiff's causes of action or conclusively establishes its own cause of action, the burden shifts to the non-movant to respond with evidence raising a genuine issue of material fact that would preclude summary judgment. *See Rhône-Poulenc*, 997 S.W.2d at 222–23. In deciding whether a disputed material fact precludes summary judgment, we take as true evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Knott*, 128 S.W.3d at 215.

### 2. Applicability of Rule 11

Rule 11 of the Texas Rules of Civil Procedure provides: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any

suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11; *see also Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007) (citing *Padilla*, 907 S.W.2d at 460); *Tindall v. Bishop, Peterson, & Sharp, P.C.*, 961 S.W.2d 248 (Tex. App.—Houston [1st Dist.] 1997, no pet.). A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 n.58 (Tex. 2007); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Our court has held that a settlement agreement transcribed by a court reporter but not done in open court does not comply with Rule 11. *See Tindall*, 961 S.W.2d at 251 ("A majority of this Court sitting en banc agrees . . . that the agreement dictated to and transcribed by the court reporter and filed with the papers of the case is not a rule 11 agreement."). Thus, the trial court did not have the ministerial duty to enforce the transcribed agreement. That the transcribed agreement fails as a Rule 11 agreement, however, does not preclude Cason from seeking its enforcement under contract law. *See ExxonMobil Corp.*, 174 S.W.3d at 309 (citing *Padilla v. LaFrance*, 907 S.W.2d 454, 461–62 (Tex.1995)); *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 657 (Tex. 1996); *Tindall*, 961 S.W.2d at

251 (enforcing settlement agreement in accord with contract-law principles). We thus examine whether the parties formed a binding settlement agreement.

### 3. *Contract formation*

Robinson contends that the trial court erred in enforcing the settlement agreement because it lacks essential terms and, consequently, it does not evidence the meeting of the minds required to form a binding agreement.  Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Potcinske v. McDonald Prop. Invs.*, 245 S.W.3d 526, 529–30 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Id.* Mutual assent, concerning material, essential terms, is a prerequisite to formation of a binding, enforceable contract. *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992)). An "essential" term is

> one that the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain. Failure to fulfill such a promise, in other words, would seriously frustrate the expectations of one or more of the parties as to what would constitute sufficient performance of the contract as a whole.

14

*Neeley v. Bankers Trust Co. of Tex.*, 757 F.2d 621, 628 (5th Cir. 1985), *quoted in Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 485 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Robinson claims that the transcribed agreement is unenforceable because it omits terms that the parties anticipated would be included in the final, written settlement agreement—specifically, the monetary compensation he was to receive as part of the consideration for the tracts of real property referenced in the transcription. The transcribed agreement addresses the consideration Robinson is to receive, but indicates neither that Cason owes him any monetary consideration, nor refers to future negotiation of an essential monetary term. Parties may agree on terms sufficient to create a contract, even while leaving other provisions for later negotiation and agreement. *See Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex.1972); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex. App.—Waco 2005, pet. denied); *cf.* TEX. BUS. & COM. CODE ANN. § 2.201(a) (providing that writing is not insufficient because it omits term, but only written terms can be enforced). The agreement does not lack the essential element of consideration. In addition to Cason's mutual release and dismissal of claims, the transcribed agreement recites that Robinson is to receive possessory rights to the business premises for six months; Cason's resignation from all offices that he holds or might have held in Horizon, including its board of directors; an agreement

15

that Cason holds no ownership interest, will take no management responsibility, and will take no role whatsoever in Horizon's day-to-day or long-term operations; a permanent injunction preventing Cason from engaging in any interference with Horizon's business; the return of any stock that Cason holds in Horizon; and the return of all documents produced to Cason in the course of the litigation. For the same reason, the inclusion of additional terms in the written settlement agreement prepared by Cason does not raise a fact issue concerning the enforceability of the dictated terms.

Robinson also claims that the transcribed agreement is unenforceable because it lacks specificity concerning the tracts of land Robinson agreed to convey to Cason. It is well settled that a land description is sufficient to convey the property if it furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972). The transcribed agreement refers to tract of land that is the subject matter of a specified lawsuit and an exhibit that contains the legal description of two tracts of land, which in turn references their map locations in the Brazoria County plat records. It also refers to the fact that Robinson or an entity in his control holds the title to those tracts, and that the tracts are contiguous or in the same subdivision as the tract at issue in the lawsuit.

Robinson complains that the exhibit was added to the transcribed agreement after the fact, but he does not claim that the descriptions did not exist when the parties dictated the settlement or that they incorrectly describe the property. Nor does he contend that the reference to tracts "owned by him or an entity in his control" fails to identify the conveyances with reasonable certainty. *See AIC Mgmt.*, 246 S.W.3d at 648–49; *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex. 1977). We reject Robinson's argument that the agreement fails for lack of an essential term.

### 4. *Affirmative defenses*

Robinson contends that the trial court erred in rejecting his affirmative defenses of mistake, statutory fraud, and duress. We consider each in turn.

### a. *Mistake*

A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written agreement does not accurately reflect that intention due to a mutual mistake. *See Smith-Gilbard v. Perry*, 332 S.W.3d 709, 713 (Tex. App.—Dallas 2011, no pet.); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd). The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-on exchange. *City of The Colony*, 272 S.W.3d at 735. When mutual mistake is alleged, the party seeking to avoid its obligations under a contract must show what the parties' true agreement was and

17

that the instrument incorrectly reflects that agreement because of a mutual mistake. *Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 213 (Tex. App.—Houston [1st Dist.] 2004 pet. denied).

To prove a mutual mistake, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A unilateral mistake by one party, combined with knowledge of that mistake by the other party, is equivalent to a mutual mistake. *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988). But, "[a] mistake by only one party to an agreement, not known or induced by acts of the other party[,] will not constitute grounds for relief." *Smith-Gilbard*, 332 S.W.3d at 713–14 (quoting *Johnson v. Snell*, 504 S.W.2d 397, 399 (Tex. 1974)).[1] The mutual mistake defense does not exist merely to avoid the results of an unhappy bargain. *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990).

Robinson contends that the mistake was the omission of a monetary compensation term from the transcribed agreement, rendering it incomplete. But, neither Robinson nor Cason mistakenly omitted the term; even under Robinson's

---

[1] Robinson also relies on *James T. Taylor & Son, Inc. v. Arlington Independent School District*, 335 S.W.2d 371 (Tex. 1960), in contending that he is entitled to equitable relief from a unilateral mistake of fact because enforcement of the agreement with without the monetary compensation terms would be unconscionable. *See id.* at 372–73.

18

version of the events, he and Cason agreed that they would not address monetary payment on the record, but would incorporate it in a later agreement subject to financing conditions. Both Robinson and Cason were present during the declaration that the transcribed agreement constituted a full, final, and complete agreement to settle their disputes. Robinson's regret about the settlement terms does not raise a fact issue as to a mutual mistake of fact, because even under Robinson's version, the parties had not labored under the impression that the on-the-record settlement incorporated a monetary payment requirement.

### b.  Statutory fraud

The elements of statutory fraud are: (1) a transaction involving real estate or stock; (2) during the transaction the other party made a false representation of fact, made a false promise, or benefitted by not disclosing that a third party's representation was false; (3) the false representation or promise was made for the purpose of inducing the party to enter into a contract; (4) the party relied on the false representation or promise by entering into the contract; and (5) the reliance caused the party injury. TEX. BUS. & COM. CODE ANN. § 27.01.

The proponent of the fraud claim must show actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).  We determine whether Robinson raised a fact issue on justifiability by inquiring whether, "given a fraud plaintiff's individual characteristics, abilities,

19

and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part." *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 (5th Cir.1990) (applying Texas law), *quoted in Grant Thornton LLP.*, 314 S.W.3d at 923. Robinson again points to the allegedly missing monetary consideration term as grounds for this affirmative defense, but the inclusion of the "full and final agreement" language in the transcribed agreement put Robinson and his counsel on notice that any reliance on additional, unspoken contract terms was unjustifiable. Robinson does not adduce evidence that counters the effect of the written agreement's recitations that it contains all material terms. For this reason, Robinson fails to raise a fact issue that he is entitled to avoid the contract based on a statutory fraud defense.

### c. Duress

In contending that he is entitled to avoid the settlement agreement because of duress, Robinson complains that he was ill the day the parties reached the agreement. To avoid a contract based on duress, Robinson would have to prove that (1) Cason threatened to do some act that he had no legal right to do; (2) the threat was of such a character as to destroy Robinson's free agency; (3) the threat overcame Robinson's free will and caused him to do that which he would not otherwise have done and that he was not legally bound to do; (4) the restraint was

20

imminent; and (5) Robinson had no present means of protection. *See Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 837 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *Creative Mfg., Inc. v. Unik, Inc.*, 726 S.W.2d 207, 211 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.)). Robinson had counsel present during the dictation of the settlement agreement. Robinson expressly confirmed on the reporter's record that he had communicated with both of his attorneys, one of whom was not present, that he understood and approved the settlement, and that he was satisfied he had been adequately represented by his attorney in attendance. This confirmation negates any showing that Cason destroyed Robinson's free agency or that Robinson had no present means of protection. Robinson does not adduce controverting evidence. As a result, Robinson fails to raise a fact issue on his duress claim.

### 5. *Inclusion of Carol Robinson in settlement*

Michael Robinson also contends that his wife, Carol, was not present during the settlement discussions and did not consent to its terms. The transcribed agreement, however, includes Carol as a settling party. In addition, she and Michael were both represented by the attorney who had communicated with counsel in attendance at the settlement, and the record reflects that he understood and approved of the settlement. In the absence of contrary evidence, an attorney is generally presumed to be acting within the authority given by the client. *Kelly v.*

21

*Murphy*, 630 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). No evidence suggests that Carol's counsel did not have her permission to consent to the settlement agreement, nor did counsel make any effort to exclude her from the settlement. As a result, Carol cannot avoid her responsibilities under the settlement.

We hold that the trial court correctly granted summary judgment enforcing the transcribed settlement agreement.

## C. Remaining issues

Robinson's remaining issues consist of challenges to the consolidation of the case pending in the 149th Judicial District Court into the previously filed case pending in the 23rd Judicial District Court and to the denial of his motion to recuse the trial judge. Robinson waived these challenges in the settlement agreement. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Dep't of Prot. & Reg. Servs. v. Schutz*, 101 S.W.3d 512, 516 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In determining if a waiver has in fact occurred, the court must examine the acts, words, or conduct of the parties and it must be "unequivocally manifested" that it is the intent of the party to no longer assert the right. *Id.* "Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law." *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers*

22

*Ass'n*, 1 S.W.3d 108, 111 (Tex.1999); *Tenneco, Inc. v. Enter. Prods.*, 925 S.W.2d 640, 643 (Tex. 1996).

First, with respect to the consolidation into the underlying suit of Robinson's suit for injunctive relief to prevent the foreclosure sale, the agreement declares that "[t]his global settlement includes the lawsuit that was recently filed to stop the foreclosure, inclusive of the parties, that was later consolidated by the 23rd Judicial District Court." Because Robinson explicitly agreed to settle the disputes arising in the consolidated case as well as the underlying suit, the propriety of consolidation is a nonissue: no dispute remains for review.

Second, with respect to the denial of his motion to recuse, we note that the settlement agreement places the judge presiding in the 23rd Judicial District Court in an essential and pivotal role. It provides that:

> The transcription of this agreement and will be submitted to the Court for approval of this settlement agreement. The Court will be the arbiter of the terms of any written document necessary. The Court will be the final decision-maker if any dispute occurs hereafter as to the terms of any releases that need to be exchanged between the parties and the contents of those terms, after each party has advised the Court what it believed the agreement was.
>
> . . .
>
> [I]f we can't agree on the wording, the Court will be submitted each person's position, and the Court will ultimately make the decision on the wording of any release. . . [and] [a]ny ambiguity [will] be resolved by the Judge of the 23rd Judicial District Court.

Robinson's motion did not raise any valid ground for recusal that he had not discovered before he agreed to the settlement. We hold that Robinson waived any complaint that the judge should be recused.

## Conclusion

We conclude that the trial court properly granted summary judgment enforcing the December 2010 agreement. We further hold that Robinson waived his remaining issues on appeal. We therefore affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.