**Opinion issued August 29, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00513-CV
_____

**DISCOVER BANK, Appellant**

**V.**

**MARCUS MILLER, Appellee**

---

**On Appeal from County Court at Law No. 3**
**Brazoria County, Texas**
**Trial Court Case No. CI64294**

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Discover Bank ("Discover"), challenges the trial court's order denying its motion to compel arbitration of the counterclaim of appellee, Marcus Miller, for violations of the federal Truth in

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016.

Lending Act ("TILA").[2]  In its sole issue, Discover contends that the trial court erred by denying its motion to compel arbitration.

We affirm.

## Background

In its original petition, Discover alleged that "[o]n or about March 27, 2018," it "entered into a [c]ontract" with Miller "for the extension of [a] credit bearing account" (the "loan agreement").  According to Discover, it "performed its obligations under the [loan agreement] by extending credit to [Miller]," and Miller "received and/or made use of the credit extended/money lent" by Discover according to the loan agreement's terms.  But Miller "did not make repayment as agreed," and his "last payment on [his] [a]ccount" was made on October 2, 2021.  On August 31, 2021, Miller's account "was closed due to nonpayment, and at the time the [a]ccount was closed, an unpaid balance remained owed."  Discover brought a claim against Miller for breach of contract, asserting that Miller breached the loan agreement and owed Discover, after accounting for all "just and lawful offsets, credits, and payments on the credit account," damages in the amount of $29,073.97.

Miller answered, generally denying the allegations in Discover's petition.  He also brought a counterclaim against Discover.  In his first amended

---

[2]    *See* 15 U.S.C. § 1632(a); 12 C.F.R. § 1026.17(a)(2).

counterclaim, Miller alleged that he had "received a personal loan from Discover." According to Miller, "[a]s part of the loan documents, Discover sent [him] initial disclosures required by" the TILA. But Discover's disclosures as to the "Annual Percentage Rate" and "Finance Charge" were "in the same typeface as the other information concerning the loan." (Internal quotations omitted.) Because Discover "[f]ail[ed] to put the terms 'Annual Percentage Rate' and 'Finance Charge' in bold, all capital letters," or in some other conspicuous way, Miller asserted that Discover's disclosures violated the TILA.[3] Miller further alleged that "[o]n information and belief, Discover used this same form for tens, if not hundreds[,] of thousands of similar transactions throughout the State of Texas."

Miller brought a counterclaim against Discover for violations of the TILA "on behalf of himself, and all others similarly situated, as representative" of a class comprised of "[a]ll Texas residents who received disclosures from [Discover] that failed to print the terms 'Annual Percentage Rate' and 'Finance Charge' more conspicuously than the surrounding terms."

Discover moved to compel arbitration of Miller's counterclaim against it, arguing that Miller was required to arbitrate his counterclaim because the loan agreement that Miller and Discover signed "[wa]s governed by a written, valid arbitration agreement, which require[d] arbitration of disputes with Discover."

---

[3] *See* 15 U.S.C. § 1632(a); 12 C.F.R. § 1026.17(a)(2).

Discover further asserted that the loan agreement "prohibit[ed] [Miller] from pursuing class claims" against it, and Miller did "not opt[] out of arbitration." As such, Discover maintained that "Miller [wa]s required to arbitrate his [counter]claim[] on an individual basis."

Additionally, Discover asserted that "Miller [had] expressly agreed" that a dispute "arising under or relating to" the loan agreement "may be resolved by binding arbitration instead of in court" at either party's request. (Internal quotations and alterations omitted.) And Miller had agreed that "Discover or Miller could elect arbitration with respect to any new claims later asserted in [a] lawsuit" even if the parties had "opted to litigate in court." (Internal quotations omitted.) According to Discover, Miller had expressly agreed that his arbitration agreement with Discover would be governed by the Federal Arbitration Act ("FAA"), and the arbitration provision in the loan agreement was "broad enough in scope to encompass Miller's counterclaim against Discover."

Discover attached to its motion to compel arbitration the declaration of Dan Matysik, the vice-president of "Discover Personal Loans."[4] In his declaration, Matysik declared that "[a]ccording to Discover's records, on March 24, 2018, Miller applied for a personal loan with Discover." A few days later, "Discover approved Miller for a $35,000.00 loan." "[W]hen Miller's [loan] application was

---

[4]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 132.001.

approved," Discover, according to its standard practice, disbursed loan proceeds in the approved amount "to [Miller] and the applicable [l]oan [a]greement was mailed to him, postage prepaid, at the address Miller provided on his [loan] application."

The loan agreement, a copy of which was attached to Matysik's declaration, stated that Miller

> agree[d] to [its] terms . . . and promise[d] to pay to [Discover] the Principal Amount Advanced (the Amount Financed), with interest at the Interest Rate disclosed with the Truth in Lending Disclosure Statement. Interest w[ould] begin to accrue on the entire Principal Amount Advanced from the date of the first disbursement and w[ould] continue to accrue on the unpaid balance of the principal amount until [Miller] . . . repaid all of the Principal Amount Advanced.

The loan agreement also included terms for minimum payments, late fees, prepayment, default, and acceleration. And it included an arbitration provision, which stated:

> **Agreement to arbitrate**. In the event of a dispute between you and us arising under or relating to this Account, either may choose to resolve the dispute by binding arbitration, as described below, instead of in court. Any claim (except for a claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it. THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.
>
> . . . .
>
> CLASS ACTION WAIVER. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS NEITHER YOU NOR WE

MAY CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER ACCOUNTHOLDERS, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. Only a court, and not an arbitrator, shall determine the validity and effect of the Class Action Waiver. Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit.

The arbitration provision also specified that it was governed by the FAA. In conspicuous print, it notified Miller:

You [h]ave the [r]ight to [r]eject [a]rbitration for this [a]ccount. You may reject the arbitration agreement but only if we receive from you a written notice of rejection within [thirty] days of your receipt of this Agreement. . . . Your rejection notice must include your name, address, phone number, [a]ccount number and personal signature. No one else may sign the rejection notice for you. Your rejection notice also must not be sent with any other correspondence. Rejection of arbitration will not affect your other rights or responsibilities under this [a]greement. If you reject arbitration, neither you nor we will be subject to the arbitration provisions for this [a]ccount.

And the loan agreement provided:

[THIRTY]-DAY GUARANTEE: If you return the loan proceeds (all amounts advanced to you or on your behalf) within [thirty] days of the date of disbursement of your loan, we will not charge you any interest or origination fees if applicable) and your loan will be canceled. You must submit your request to cancel to us in writing, along with a single check for the amount of the loan proceeds . . . . We must receive this request to cancel and the loan proceeds within [thirty] days of the date of disbursement of your loan disbursement of the loan proceeds.

Matysik stated in his declaration that "Miller neither returned the loan proceeds nor submitted a request to opt out of the [arbitration provision]," and

6

thus, Miller consented to the terms of the arbitration provision in the loan agreement.

In his response to Discover's motion to compel arbitration, Miller asserted that Discover had waived its right to arbitration by choosing to pursue its breach of contract claim against Miller in court. Miller also argued that because Discover chose to litigate its own claims against its customers rather than arbitrate them, the arbitration provision was "illusory" and thus unenforceable.

In its reply to Miller's response, Discover argued that Miller did not prove that Discover had waived its right to arbitration because he did not show that Discover had substantially invoked the judicial process and that compelling arbitration would cause him prejudice. According to Discover, it had merely initiated its suit against Miller, and the record did not show that either Discover or Miller had engaged in extensive litigation or discovery. Discover also argued that Miller could not show that the arbitration provision was illusory "because Miller and Discover [were] equally able to pursue arbitration under the [loan agreement]."

Miller filed a surreply, in which he asserted that Discover did not provide any evidence of his "valid consent to the loan agreement, and by extension, the arbitration clause at issue in th[e] case." Specifically, according to Miller, Discover produced no evidence that Miller "was aware of, signed, or consented to the terms of the arbitration agreement before the [loan] monies were disbursed to

him" because there was "no evidence" that Miller had "signed the arbitration agreement" or that his "consent to the loan agreement was valid." Miller further complained that Discover had produced no evidence that "he had the opportunity to validly consent to the terms and condition[s] of the loan" agreement during the online loan application process.[5]

Discover responded to Miller's surreply, noting that it had provided Miller "with a copy of the terms and conditions" before he even accessed "the Discover website because he was sent a solicitation containing the terms and conditions for the loan" agreement. Once on Discover's website, "Miller was asked to provide certain information about himself, his income, and the loan he was seeking to obtain." Miller was again presented with the terms and conditions of the loan agreement, including the arbitration provision, and was required to "click '[c]ontinue' to indicate his consent and to move forward with submitting his loan application." Further, Discover asserted that "the terms and conditions" of the loan agreement, including the arbitration provision, "were conspicuously presented." Thus, according to Discover, the terms and conditions were enforceable, and Miller should be compelled to arbitrate his counterclaim against Discover.

Discover attached to its response to Miller's surreply the declaration of Satish Bhatt, its director of "DPL Acquisition Operations." Bhatt declared that

---

[5] Miller also raised several evidentiary objections to Matysik's declaration, but he did not secure a ruling on those objections.

8

"[a]s part of [Discover's loan] solicitation, Miller would have received a copy of the terms and conditions for a loan with Discover, as well as a code to use when applying online." When "Miller applied online for a personal loan with Discover" on March 24, 2018, he "was asked to provide certain information about himself, his income, and the loan for which he was applying." Bhatt explained that "[b]efore Miller submitted his [loan] application, Discover presented Miller with an e-signature agreement," which required Miller to click "[c]ontinue" if he "accepted the terms of the e-signature agreement" and wished to submit a loan application to Discover. (Internal quotations omitted.) According to Bhatt, Discover's records reflected that after "Miller [had] accepted the e-signature agreement" by clicking "[c]ontinue," "Discover provided Miller with the terms and conditions of the loan [agreement], including the arbitration agreement." (Internal quotations omitted.) Attached to Bhatt's declaration were copies of Discover's loan solicitation mailing and printouts of its website's online loan application webpages.

After a hearing, the trial court denied Discover's motion to compel arbitration.

## Standard of Review

"We review a trial court's order denying a motion to compel arbitration for [an] abuse of discretion." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex.

9

2018). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). "We defer to the trial court's factual determinations if they are supported by evidence." *Henry*, 551 S.W.3d at 115. We review the trial court's legal determinations as to the formation, validity, and enforcement of an arbitration agreement de novo. *See id.*; *Oak Crest Manor Nursing Home, LLC v. Barba*, No. 03-16-00514-CV, 2016 WL 7046844, at *2 (Tex. App.—Austin Dec. 1, 2016, no pet.) (mem op.). A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

When an order denying a motion to compel arbitration does not state the grounds for the denial, we must affirm the order if any of the grounds asserted in the trial court for denying the motion are meritorious. *See In re Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

**Motion to Compel Arbitration**

In its sole issue, Discover argues that the trial court erred in denying its motion to compel arbitration because "[t]here [was] a valid arbitration agreement

10

between the parties that require[d] any claim between Discover and Miller . . . be resolved by binding arbitration at the request of either party."

Discover relies on the loan agreement to support its assertion that Miller's counterclaim against it was required to be resolved by arbitration. The loan agreement contains an express agreement to arbitrate under the FAA, which generally requires the enforcement of valid agreements to arbitrate. *See* 9 U.S.C. § 2; *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018); *Taylor Morrison of Tex., Inc. v. Goff*, No. 01-21-00404-CV, 2022 WL 1085714, at *8 (Tex. App.—Houston [1st Dist.] Apr. 12, 2022, no pet.) (mem. op.); *see also In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (explaining parties may expressly agree to arbitrate under FAA). "Section 2 of the FAA states [that] arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 891 (Tex. 2010) (quoting 9 U.S.C. § 2). "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021) (internal quotations omitted).

A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration agreement and (2) the claims in dispute fall within that agreement's scope. *In re Rubiola*, 334 S.W.3d at 223; *SK Plymouth, LLC v. Simmons*, 605 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

11

"If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on [his] defenses to the arbitration agreement." *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134–35 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (internal quotations omitted).

In response to Discover's motion to compel arbitration, Miller attacked the validity of the arbitration provision in the loan agreement by challenging whether the parties had entered an agreement to arbitrate. *See RSL Funding*, 569 S.W.3d at 121 (explaining ways to challenge validity of arbitration clause include "challenging whether an agreement exists at all"). Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Potcinske v. McDonald Prop. Invs.*, 245 S.W.3d 526, 529–30 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "'Meeting of the minds' describes the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Id.* at 530. Mutual assent concerning material, essential terms is a prerequisite to formation of an enforceable contract. *Id.*; *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

To prove that an offer was made, a party must show that (1) the offeror intended to make an offer, (2) the offer's terms were clear and definite, and (3) the offeror communicated all essential terms of the offer to the offeree. *McAtee v. City of Austin*, No. 03-10-00496-CV, 2013 WL 5855638, at *4 (Tex. App.—Austin Oct. 10, 2013, no pet.) (mem. op.); *Domingo v. Mitchell*, 257 S .W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 24 & cmt. a (AM. L. INST. 1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it. . . . [T]he key concept involves giving the addressee the apparent power to conclude a contract without further action by the other party.").

Discover's initial solicitation was not an offer; it was only an invitation for Miller to enter negotiations with Discover to determine if he qualified for a loan and, if so, how much. *See McAtee*, 2013 WL 5855638, at *4–5 (language on website about program offering "rebates to help customers implement solar photovoltaic technology in their homes and businesses," which instructed interested customer to complete "Solar Energy Rebate Participation Form" and follow additional steps necessary to qualify for rebate did not make offer customer could accept by submitting rebate application to create binding contract); *see also Edmunds v. Houston Lighting & Power Co.*, 472 S.W.2d 797, 799–800 (Tex.

13

App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.) (brochure mailed to plaintiff announcing defendant's program of underground residential electric service without charge subject to specified conditions and limitations was merely invitation to enter into negotiations to contract).

Discover did not extend an offer to loan Miller $35,000.00 under definite terms and conditions until after it had approved his loan application.[6] Matysik explained in his declaration that following its approval of Miller's loan application, and according to Discover's "standard practice," Discover sent Miller a check for $35,000.00 in loan proceeds and a copy of the loan agreement, which set forth specific terms for repayment, including the interest rate, payment schedule, and consequences of default. The loan agreement also contained the arbitration provision, and it instructed Miller how to reject the arbitration provision and refuse the loan. Discover's "standard practice," then, was to offer the loan to an approved applicant by tendering the loan agreement and a check in the approved amount. Matysik observed that Miller did not send Discover a written notice of rejection of

---

[6] Because Discover did not make an offer with definite terms and conditions for Miller's loan until Miller's completed loan application had been approved, the parties' evidence of Miller's online and telephone contacts with Discover during the application process is also not relevant to the issue of whether Discover and Miller entered an enforceable agreement to arbitrate. We further note that Discover's instruction to Miller in the loan agreement as to the steps necessary to reject the arbitration provision manifests an understanding that parties had not yet reached an agreement about whether they would arbitrate any dispute under the loan agreement.

the arbitration provision within the time specified in the loan agreement and did not return the $35,000.00 check.

Whether two parties have formed a contract is a question of the parties' intent. *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021). A signature is not required; a party's conduct may constitute objective evidence of intent. *See Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015) ("[W]hile signature and delivery are often evidence of the mutual assent required for a contract, they are not essential."); *Horton v. DaimlerChrysler Fin. Servs. Ams., L.L.C.*, 262 S.W.3d 1, 6 (Tex. App.—Texarkana 2008, no pet.) (noting "acceptance may be shown by conduct").

The offeror may specify a particular manner of acceptance. *Horton*, 262 S.W.3d at 5; *see also Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) ("Where an offer prescribes the time and manner of acceptance, those terms must ordinarily be complied with to create a contract."). When a proposed agreement does not provide for a specific manner of acceptance, the "offer may be accepted in any manner reasonable under the circumstances." *Horton*, 262 S.W.3d at 6 (citing RESTATEMENT (SECOND) OF CONTRACTS § 30 (AM. L. INST. 1981)). In *Horton*, for example, the court of appeals concluded that the appellant had accepted the appellee's offer to settle a debt by tendering his first payment. *See id.*

Here, the loan agreement prescribed the conduct necessary for Miller to reject the arbitration provision and the loan agreement, but it did not contain any information about how Miller was to accept them.  Discover points to Miller's failure to refuse the loan or reject the arbitration provision as manifesting his intent to accept the loan agreement and its arbitration provision, but Miller denied having accepted them, and there is no evidence of any conduct by Miller that manifests an unequivocal intent to form an enforceable agreement to arbitrate any dispute under the loan agreement.  Thus, we conclude that Discover did not satisfy its initial burden to establish the existence of a valid arbitration agreement.

Accordingly, we hold that the trial court did not err in denying Discover's motion to compel arbitration.

We overrule Discover's sole issue.

## Conclusion

We affirm the trial court's order denying Discover's motion to compel arbitration.


                                        Julie Countiss
                                        Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.

Rivas-Molloy, J., dissenting.  Dissenting opinion to follow.

16