**Reverse and Remand; Opinion Filed July 24, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00132-CV

### D. BRENT LEMON, Appellant
### V.
### DANIEL HAGOOD, Appellee

**On Appeal from the County Court at Law No. 5
Dallas County, Texas
Trial Court Cause No. CC-11-03989-E**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Myers

D. Brent Lemon appeals the trial court's judgment in favor of Daniel Hagood following a jury trial in this breach-of-contract suit. The jury found Lemon breached the contract and determined Hagood suffered damages of $97,024.77 and that his reasonable attorney's fees in the trial court were $125,000. The trial court entered judgment for Hagood on the verdict. Lemon brings ten issues on appeal contending (a) Hagood's suit is barred as a collateral attack, by res judicata, by a federal statute, and by the Texas Disciplinary Rules of Professional Conduct; (b) the evidence was legally and factually insufficient to support the submission of certain jury questions; and (c) the trial court erred by allowing the admission of evidence of Hagood's attorney's fees and evidence of questions raised in bankruptcy court. We conclude the trial court erred in its submission of one of the jury questions. We reverse the trial court's judgment and remand the cause for further proceedings.

## BACKGROUND

In 1999, Gary Carpenter and Julie Perez (the Carpenters)[1] signed a contract with Van Shaw of the partnership Shaw & Lemon[2] to represent them in a suit against The Holmes Builders, Inc. In the agreement, the Carpenters agreed to pay forty percent of any recovery as attorney's fees and to pay all expenses. In 2001, as the case was near going to trial, Shaw hired Hagood to help with the trial. Shaw and Lemon had a standing oral agreement with Hagood that they would pay him twenty-five percent of what they received under the contingent-fee contracts with their clients on cases in which he assisted them. In those cases, Hagood and Shaw would handle the trial, and Lemon would handle the appeal and collection.[3] At trial, the jury found Holmes Builders was liable and assessed the Carpenters' damages at about $1.8 million. In October 2001, the trial court granted Holmes Builders' motion for judgment non obstante veredicto and rendered a take-nothing judgment on the Carpenters' claims. Lemon handled the appeal of the take-nothing judgment. In 2004, the court of appeals reversed the trial court's judgment, rendered judgment for the Carpenters, and remanded the case to the trial court for entry of judgment in accordance with the jury's verdict. *See Carpenter v. Holmes Builders, Inc.*, No. 11-02-00132-CV, 2004 WL 306130 (Tex. App.—Eastland Feb. 19, 2004, pet. denied). On April 6, 2005, the trial court entered the final judgment for the Carpenters for $2,003,240 against Holmes Builders.

---

[1] Van Shaw testified that Gary Carpenter and Julie Perez are married but "[t]hey just go by separate names."

[2] At trial, the parties, disputed whether Shaw & Lemon was a partnership in 2001. The jury found the firm was a partnership, and Lemon does not challenge that finding on appeal.

[3] Hagood testified Lemon handled "the appeal and the post-verdict issues," but he did not expressly testify that Lemon was handling the collection process. However, a reasonable juror could conclude from Hagood's testimony and from the fact that Lemon filed the Carpenters' claim in bankruptcy court against the Holmes Builders bankruptcy estate that Lemon was handling the collection process.

In 2003, while the Carpenters' case was on appeal, Shaw and Lemon ceased practicing together and began litigation against each other that continues to this day. After Hagood received notice of the 2005 final judgment in the Carpenters' case, he wrote letters to Lemon reminding Lemon of his twenty-five percent interest in any attorney's fees received by Lemon or Shaw on the case and asking Lemon to acknowledge Hagood's interest. Lemon did not respond to Hagood's letters.

In 2006, after the trial court had rendered the final judgment for the Carpenters against Holmes Builders, Holmes Builders filed for bankruptcy protection. The Carpenters filed a claim in the bankruptcy case for about $2.1 million. In August 2006, Lemon applied to become special counsel for the bankruptcy trustee. Lemon and the trustee signed an agreement that Lemon would be paid thirty-four percent of recovered assets for the Holmes Builders bankruptcy estate. Lemon signed an affidavit stating he had advised the Carpenters of his desire to represent the bankruptcy trustee and that they consented. Lemon also stated in the affidavit that he "waived all claims for any recovery of attorney fees, for all past services, directly from" the Carpenters. Lemon also stated in the affidavit that "[n]either I, my firm, nor any member thereof, insofar as I have been able to ascertain, has any current connection with the debtor, creditors, or any other party in interest . . . ." Lemon did not tell either Shaw or Hagood he had "waived all claims for any recovery of attorney fees" in the Carpenter case.

In 2009, after more than two years of litigation as special counsel for the bankruptcy trustee, Lemon recovered $500,000 for the Holmes Builders bankruptcy estate, earning a fee of $157,648.66. In 2010, Lemon recovered an additional $684,474.24 for the bankruptcy estate and received an attorney's fee of $230,450.40. Thus, the bankruptcy trustee paid Lemon $388,099.06 in attorney's fees. Hagood did not object in bankruptcy court to Lemon being paid these fees.

The Carpenters received two payments totaling $576,662.10 on their bankruptcy claim. Hagood objected to the first payment, asserting he was entitled to ten percent of any payments to the Carpenters. The trial court permitted the full payments to the Carpenters and directed the trustee to place the remaining recovered funds in escrow. Hagood objected to the trustee's final report, which recommended total payments to the Carpenters of $576,607, and requested that the trustee pay him $57,660 (ten percent[4] of the payments to the Carpenters) from the final distribution to the Carpenters. Hagood then amended his objection and asserted he was entitled to ten percent of the total amount Lemon recovered for the bankruptcy estate, or approximately $110,000. Hagood withdrew his objection to the trustee's final report, and the Carpenters received payments totaling $576,662.10.[5]

In 2011, Hagood brought this suit against Lemon. Hagood sued Lemon under a variety of causes of action, including breach of contract. Hagood asserted he had an enforceable agreement with Shaw & Lemon for twenty-five percent of the attorney's fees Shaw & Lemon received under the contingent-fee agreement with the Carpenters. Hagood asserted Lemon was jointly and severally liable for Shaw & Lemon's failure to pay his twenty-five percent interest in the contingent fee. The trial court granted Lemon's motion for summary judgment on all of Hagood's causes of action except breach of contract. The jury found Shaw & Lemon was a partnership, that it promised to pay Hagood for his services in the Carpenter lawsuit twenty-five percent of any recovery of attorney's fees "related to the Firm's representation in that lawsuit," that Lemon failed to pay Hagood as agreed, that Hagood's damages were $97,024.77, and that

[4] The "ten percent" claim is based on Hagood's contract for twenty-five percent of the firm's forty percent contingent fee. Twenty-five percent of forty percent is ten percent.

[5] Lemon testified the Carpenters received $576,662.10 on their claim. The record does not explain why they were paid $576,662.10 when the trustee's final report recommended payments of $576,607.

Hagood's reasonable attorney's fees through trial were $125,000. The amount of damages found by the jury, $97,024.77, is twenty-five percent of $388,099.06, which was the total fee Lemon received as special counsel in the Holmes Builders bankruptcy action. The trial court entered judgment on the verdict.

## SUFFICIENCY OF THE EVIDENCE

In his fourth, fifth, sixth, and seventh issues, Lemon contends the evidence was legally and factually insufficient to support the submission of jury questions and to support the jury's verdict. When reviewing the legal sufficiency of the evidence, we consider all the evidence before the jury, crediting evidence in support of the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). If the evidence furnishes a reasonable basis for differing conclusions by reasonable minds as to the existence of a vital fact, then there is legally sufficient evidence, more than a scintilla, to support the fact. *Id.* When reviewing the sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.). We may not substitute our judgment for the fact finder's, even if we would reach a different answer on the evidence. *See Maritime Overseas Corp.*, 971 S.W.2d at 407; *Hinkle*, 223 S.W.3d at 782.

–5–

Ordinarily, we evaluate the sufficiency of the evidence under the charge as submitted. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 1992). However, when the charge is erroneous and the appellant timely objected to the charge, we review the evidence under the charge that should have been given. *Id.*

In his fourth, sixth, and seventh issues, appellant contends the evidence was legally and factually insufficient to support jury questions 2, 3, and 4, which asked whether Lemon & Shaw agreed to pay Hagood "an undivided twenty-five percent interest in any recovery of attorneys' fees . . . related to the Firm's representation in" the Carpenters' lawsuit against Holmes Builders, whether Lemon failed to pay Hagood as agreed, and Hagood's damages from the breach. In the fifth issue, Lemon contends the trial court erred because the charge described the alleged contract between the parties too broadly.

## Charge Error

The evidence in this case shows Hagood's agreement with the firm was that he would receive twenty-five percent of the fees the firm received under the contingent-fee agreement with the Carpenters. The charge, however, stated the agreement was that Hagood would receive twenty-five percent of any recovery of attorney's fees "*related to* the Firm's representation in that lawsuit."[6] (Emphasis added.) Lemon objected to the question as not supported by the evidence and as inconsistent with Hagood's pleadings and disclosures. Lemon also submitted

---

[6] Jury Question 2 in the charge was:

Did SHAW & LEMON agree to pay Daniel Hagood in return for his services in trying the Carpenter lawsuit an undivided 25% interest in any recovery of attorneys' fees by SHAW & LEMON related to the Firm's representation in that lawsuit.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties unexpressed thoughts or intentions.

Answer "Yes" or No."

his own version of jury question 2, which described Hagood's compensation under his contract as an interest in the fees the firm recovered "under" the Carpenter agreement.[7] The trial court overruled Lemon's objections and refused his proposed jury question.

We review the trial court's submission of jury questions for an abuse of discretion. *Curtis v. AGF Spring Creek/Coit II, Ltd.*, 410 S.W.3d 511, 514 (Tex. App.—Dallas 2013, no pet.). The trial court must submit a question that is raised by the written pleadings and the evidence. TEX. R. CIV. P. 278; *Dallas City Limits Prop. Co., L.P. v. Austin Jockey Club, Ltd.*, 376 S.W.3d 792, 801 (Tex. App.—Dallas 2012, pet. denied).

Hagood argues Lemon invited any error because "Lemon's own charge contained the very phrase that formed the basis of his objection." We disagree. Lemon's requested charge stated the contract was to pay Hagood twenty-five percent of what the firm recovered "under" the Carpenter contingent-fee agreement. The court's charge described the contract as a promise to pay Hagood twenty-five percent of any recovery of attorney's fees "related to" the firm's representation in the Carpenter lawsuit. Fees recovered "under" a legal-representation contract are not the same as fees "related to" a lawsuit and could include fees that were not earned under the legal-representation contract. We conclude Lemon did not invite this error.

---

[7] Lemon's requested jury question was,

Did D. Brent Lemon agree to pay Daniel Hagood an undivided 25% interest in the recovery of the law firm of Shaw & Lemon under the Shaw-Carpenter Representation Agreement in return for Hagood's services in trying *The Holmes Builders* lawsuit?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Answer "Yes" or "No."

Hagood also asserts that Lemon's objection to jury question 2 was not sufficiently specific to preserve error. Although Lemon's objection could have been more specific, we conclude it was sufficient to apprise the trial court of his complaint.

The evidence showed that Hagood's agreement was that in return for his services at the trial of the Carpenter case, he would receive twenty-five percent of the firm's recovery under its forty-percent contingency fee with the Carpenters.[8] The record contains no evidence the agreement entitled Hagood to twenty-five percent of all fees received by the firm "related to" the Carpenters' lawsuit against Holmes Builders.

---

[8] Lemon testified,

> Q. . . . [Y]ou agreed with me that Dan Hagood, if he had ever received any money for his work in the Carpenter case, it would have been a percentage of the 40-percent contingency fee?
>
> A. In the Carpenter case?
>
> Q. Yes.
>
> A. Yes. Twenty-five percent of that contract.
>
> Q. . . . The contingency fee was that if the Carpenters recovered any money the law firm of Shaw & Lemon would receive a 40-percent portion of that money, correct?
>
> A. Yes.
>
> Q. And then from that 40 percent that money would go to Shaw & Lemon's IOLTA account, and then off the top Dan Hagood would get 25 percent of that money?
>
> A. Excluding expenses, yes.

Shaw testified,

> Q. . . . Mr. Shaw, the agreement was that, okay, Shaw & Lemon would have a 40-percent contingency-fee contract, correct?
>
> A. That's correct.
>
> Q. And then from that 40 percent Dan Hagood would then be paid 25 percent off the top?
>
> A. That is right.

Hagood testified that in previous cases under the standing agreement with Shaw & Lemon, Hagood "got 25 percent of the 40 percent that Brent [Lemon] and Shaw got." He also testified,

> A. The deal was I tried the case. And if we got money, I got paid. If we didn't get the money, . . . then I didn't get paid.
>
> Q. And you were—you were paid 25 percent of what the firm was going to get, correct?
>
> A. Twenty-five percent of the attorney's fees that they received, and they contracted for 40 percent.

In his letters to Lemon referencing the final judgment in the Carpenter case, Hagood stated, "I am entitled to 25% of the sums the attorneys eventually recover on this case."

We conclude the trial court erred by stating in jury question 2 that Hagood's compensation was an interest in the firm's recovery of attorney's fees "related to the firm's representation" in the Carpenter's lawsuit. We do not reverse the trial court's judgment unless the error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 109 (Tex. App.—Dallas 2009, pet. denied).

In his petition, Hagood alleged, "Hagood was assigned an undivided 25% interest in the 40% contingency fee owed to Shaw & Lemon through the contingency fee contract with the plaintiffs in that case, Gary Carpenter and Julie Perez." The jury question's statement that Hagood's contract was for a share of the fees "related to the firm's representation in that lawsuit" greatly expanded the scope of Hagood's compensation under the agreement beyond that supported by the evidence at trial. If the jury charge had correctly described the contract, the jury could have answered differently the subsequent questions about whether Lemon breached the contract and the extent of Hagood's damages. We conclude the error probably caused the rendition of an improper judgment and is reversible. We sustain Lemon's fifth issue.

## Legal Sufficiency of the Evidence

Having concluded the charge was erroneous, we must review the legal sufficiency of the evidence under the charge that should have been given, that is, one that stated Hagood's compensation under his contract with the firm was twenty-five percent of the fees received by the firm under the contingent-fee agreement with the Carpenters. *See St. Joseph Hosp.*, 94 S.W.3d at 530; *see also Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 158 (Tex. 1994) ("[S]ubmission of the charge is the trial court's responsibility, and the consequences of the trial

–9–

court's error should not fall unduly upon plaintiffs. Further, even if plaintiffs controlled submission of the charge, the prospect of a new trial is ordinarily sufficient disincentive to request submission of an improper charge.").

The elements of a breach of contract cause of action are (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Nat'l Health Resources Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 131 (Tex. App.—Dallas 2014, no pet.). The party seeking to enforce the contract bears the burden of proving the existence of the contract and its terms. *Celmer v. McGarry*, 412 S.W.3d 691, 700 (Tex. App.—Dallas 2013, pet. denied). Lemon asserts that Hagood presented no evidence of a valid contract, that Lemon breached the purported contract, or that Hagood suffered any damages due to a breach by Lemon.

As Lemon acknowledges in his brief, Hagood's agreement with the firm was that, in return for participating in trying the case, he would receive twenty-five percent of the fee the firm received under the contingent-fee agreement with the Carpenters. We conclude the evidence was legally sufficient to prove the existence of a valid contract.

Lemon argues there was no evidence he breached the contract with Hagood. Neither the firm nor Lemon received any funds under the contingent-fee agreement with the Carpenters. Therefore, Lemon argues, Hagood was not entitled to any money under Hagood's agreement with the firm. However, a reasonable juror could find that Lemon and the firm did not receive any funds under the Carpenter agreement because Lemon, as he stated in his affidavit in his application for the special counsel post, "waived all claim for and recovery of attorney fees . . . from Gary Carpenter and Julie Perez." Lemon argues he did not waive the rights of the firm or of Hagood but that he waived only his own rights to fees from the Carpenters. However, the jury found Shaw and Lemon was a partnership, and the jury could find that the Carpenters'

–10–

contract was with the partnership. Even though Shaw and Lemon were no longer practicing together in 2006 when Lemon filed the Carpenters' claim in the bankruptcy court and took the post of special counsel to the bankruptcy trustee, Lemon presented no evidence that the Carpenters' contract was not still an asset of the partnership. A "partner is an agent for the partnership for the purpose of its business," and the act of a partner binds the partnership if the act is for the purpose of carrying on the partnership business. *See* TEX. BUS. ORGS. CODE ANN. §§ 152.301, .302 (West 2012). The jury could find that when Lemon "waived all claim for any recovery of attorney fees," he waived not only any personal claim for attorney's fees but also the firm's right to recover fees from the Carpenters under the contingent-fee agreement. As for Lemon's argument that he did not waive Hagood's rights to recover under the firm's agreement with the Carpenters, the record does not show that Hagood had any agreement with the Carpenters. Instead, the evidence shows Hagood's agreement was with the firm for twenty-five percent of what it recovered under the forty-percent contingency-fee agreement with the Carpenters.

"It is elementary that one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 146 (Tex. App.— Dallas 2012, no pet.) (quoting *II Deerfield Ltd. P'ship v. Henry Bldg., Inc.*, 41 S.W.3d 259, 265 (Tex. App.—San Antonio 2001, pet. denied)). A reasonable juror could have found that Lemon's waiver of the firm's right to recover under the Carpenter agreement made impossible the performance of the condition precedent to Lemon's liability under Hagood's agreement— that the firm received funds under the Carpenter agreement. "A duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.—Dallas 2005, pet. denied). A

–11–

reasonable juror could have determined that Lemon failed to cooperate by waiving the fee agreement with the Carpenters and that this failure to cooperate breached the agreement with Hagood. We conclude there was some evidence that Lemon breached the agreement with Hagood.

Concerning whether there was any evidence that Hagood suffered damages, Lemon argues, "Since there was no evidence of a breach by Lemon, there could never be any damages." Because we have concluded there was some evidence Lemon breached the agreement, Lemon's argument lacks merit. We overrule Lemon's fourth and sixth issues insofar as they contend the evidence was legally insufficient. Because we conclude the judgment must be reversed and the cause remanded due to charge error, we do not reach Lemon's arguments that the evidence was factually insufficient. *See* TEX. R. APP. P. 47.1 (opinion must address "every issue raised and necessary to final disposition of the appeal"); *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex. 1981) (per curiam) (appellate court must reverse and remand for new trial if evidence is factually insufficient).

**REMAINING ISSUES**

Lemon's first, second, and third issues contend that Hagood's claim to attorney's fees awarded to Lemon in the bankruptcy case for Lemon's service as special counsel for the bankruptcy trustee was (1) an invalid collateral attack, (2) barred by res judicata, and (3) barred by 11 U.S.C. § 504 and rule 1.04 of the Texas Disciplinary Rules of Professional Conduct. In his eighth issue, Lemon contends the trial court erred by permitting evidence and argument supporting Hagood's claim to the fees awarded to Lemon as special counsel for the bankruptcy trustee because Hagood did not disclose the amount and calculation of these damages until the morning of trial. In his tenth issue, Lemon contends the trial court erred by admitting evidence of the fees paid to Lemon as special counsel for the bankruptcy trustee and by admitting

–12–

evidence of the statements made by the bankruptcy judge during a hearing in the bankruptcy court. In his ninth issue, Lemon contends the trial court erred by admitting evidence of Hagood's attorney's fees. Because we are reversing the trial court's judgment, we need not address these issues to resolve the appeal. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having concluded the jury question was defective and reversible error, we must determine the appropriate disposition. We may not disregard a jury finding unless the finding was unsupported by evidence or it was immaterial. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). In this case, legally sufficient evidence supported the appropriate jury question, and it was not immaterial but was the heart of Hagood's case. *See id.* (jury question is immaterial when it should not have been submitted, such as a question of law, or when it has been rendered immaterial by other findings). When, as in this case, a jury question is defective, the error was preserved, the evidence would be legally sufficient to support submission of the correct question, and the question was not immaterial, the remedy is to grant a new trial. *Id.* Accordingly, we reverse the trial court's judgment, and we remand the cause to the trial court for further proceedings.

130132F.P05

/Lana Myers/
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

D. BRENT LEMON, Appellant

No. 05-13-00132-CV     V.

DANIEL HAGOOD, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-11-03989-E.
Opinion delivered by Justice Myers.
Justices Lang and Brown participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellant D. BRENT LEMON recover his costs of this appeal from appellee DANIEL HAGOOD.

Judgment entered this 24th day of July, 2014.