**Affirmed and Memorandum Opinion filed August 18, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00460-CV

## GULSHAN R. JALLAN, Appellant

## V.

## PNA INVESTMENTS, LLC, Appellee

**On Appeal from the County Court No. 1**
**Galveston County, Texas**
**Trial Court Cause No. CV-0083953**

## MEMORANDUM OPINION

Appellant Gulshan R. Jallan ("Jallan") appeals a judgment in favor of appellee PNA Investments, LLC ("PNA") following a bench trial.[1] In five issues, Jallan argues: (1) there is legally insufficient evidence that Jallan is personally liable based on the personal guaranty in the record; (2) there is legally and factually insufficient evidence that Parkway owes PNA $500,000.00; (3) there is

---

[1] While there were four additional defendants to PNA's suit in the trial court, only Jallan has appealed the trial court's judgment.

insufficient evidence that Parkway's breach of the contract caused PNA $500,000.00 in damages; (4) there is legally and factually insufficient evidence supporting the $126,000.00 damage award for rent and "NNN" expenses; and (5) the trial court erred in finding that PNA satisfied its duty to mitigate damages. We affirm.

## I. BACKGROUND

On May 9, 2019, PNA filed suit for breach of contract and conversion against Jallan, Anil Rameshchandra Vyas, Vikas Jain, Gurbax Singh (collectively the "individual defendants"), and Parkway Express, LLC ("Parkway"). PNA alleged it leased premises to Parkway for 180 months for the operation of a convenience store. During months 121 to 180 of the lease, Parkway agreed to pay $11,000.00 per month in rent, plus taxes, insurance, utilities, maintenance, and all other operating costs, referred to by the parties as NNN expenses.

PNA alleged that Parkway failed to pay rent and NNN expenses for March 2019, leading PNA to issue a default letter and demand payment to Parkway. Parkway failed to respond and to make payments due under the lease, and PNA terminated the lease on March 19, 2019.

PNA sought $22,000.00 owed in past due rent, reasonable attorney's fees, expenses incurred to enforce and collect the amounts owed, all amounts owed under § 11.3 of the lease, and direct and consequential damages. PNA also alleged that the individual defendants guaranteed Parkway's obligations under the lease. Finally, PNA alleged that Parkway damaged the premises, necessitating approximately $300,000.00 in repairs, and that Parkway removed property it was not entitled to remove, causing additional damages of approximately $275,000.00.

On May 11, 2021, PNA's lawsuit was tried to the bench. PNA presented

2

testimony from Samuel Virani ("Virani"), the president and managing member of PNA.[2] Virani testified that PNA has owned the property at issue since 2002; that Parkway signed the lease with PNA in 2006; and that on June 23, 2006, the four individual defendants executed a personal guaranty on the lease between Parkway and PNA. Virani testified that the personal guaranty was signed by the four individual defendants at the same time as the lease. Virani also testified regarding the damage caused to the premises by Parkway and the equipment removed by Parkway when it vacated the premises.

Virani further explained that in order to lease the premises to PNA's new tenant, 7-Eleven, PNA had to pay 7-Eleven $500,000.00 for 7-Eleven to remodel and repair the store and replace all of the necessary equipment for its operation.[3] Virani also testified that the cost of replacing all of the equipment damaged or stolen by Parkway was approximately $521,000.00 and the trial court admitted into evidence an exhibit where Virani specified the cost to repair or replace certain items.[4]

On May 11, 2021, the trial court signed a final judgment, ordering that PNA recover $657,368.48 from the defendants, jointly and severally, plus attorney's fees and pre-judgment and post-judgment interest.

On June 7, 2021, the trial court issued findings of fact and conclusions of

---

[2] The other testimony at trial came from the attorneys for each party regarding attorneys' fees.

[3] The lease between PNA and 7-Eleven provides that PNA shall pay 7-Eleven a tenant improvement allowance in the amount of $500,000.00.

[4] Virani's damage sheet states the cost of the following equipment: "Equipment coffees machine," $2,000.00; "Fountain drink," $15,000.00; "Ac not working," $30,000.00; car wash, $250,000.00; "Gas tank clean," $5,000.00; "Counter registers[]2," $30,000.00; counter racks, $5,000.00; deli equipment, $15,000.00; "Freezers -4," $40,000.00; drive through menu board, $20,000.00; roof $11,000.00; fix the pumps, $11,000.00; put new pumps, $80,000.00; "to remove larger mobile boxes," $7,000.00.

law. The trial court found that: Parkway failed to pay rent for March 2019; Parkway breached the terms of the lease; PNA terminated the lease on March 19, 2019; the NNN expenses at the time of default were $3,000.00 per month; Parkway owes PNA $126,000.00 under the lease for rent and NNN expenses; and Parkway owes PNA $500,000.00 "for repairing, altering, renovating, partitioning, enlarging, remodeling, or otherwise putting the Premises into a condition acceptable to and reasonably necessary to obtain new tenants and/or for the cost of reletting the premises." The trial court also found that Jallan entered into a valid and enforceable guaranty guaranteeing each and every obligation under the lease and that the personal guarantee was attached and affixed to a lease agreement dated July 1, 2006. The trial court determined that PNA was to recover $680,168.48 from the defendants, jointly and severally.

This appeal followed.

## II. DISCUSSION

In his first four issues, Jallan argues: (1) the evidence is legally insufficient that he is personally liable on the lease agreement based on the guaranty in the record; (2) the evidence is legally and factually insufficient that Parkway owes PNA $500,000.00; (3) there is insufficient evidence of causation concerning the $500,000.00 damages award; and (4) there is legally and factually insufficient evidence of the $126,000.00 damage award to PNA for rent and NNN expenses.

## A. STANDARD OF REVIEW

When specific findings of fact and conclusions of law are filed and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Trelltex,*

4

*Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 789 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact have the same force and dignity as a jury's verdict and are reviewable under the same standards of legal and factual sufficiency. *Anderson*, 806 S.W.2d at 795; *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

When a legal sufficiency challenge concerns an issue on which the appellant does not bear the burden of proof, we review it under a "no evidence" standard. *See id.* at 810. A no-evidence challenge will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Serv. Corp. Intern. v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Mtr. Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). If, however, the evidence does no more than create a mere surmise or suspicion and is so slight as to necessarily make any inference a guess, then it is no evidence. *Id.*

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the

challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Barnhart v. Morales*, 459 S.W.3d 733, 745 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *Barnhart,* 459 S.W.3d at 745. The trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

We review a trial court's conclusions of law de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Potcinske v. McDonald Prop. Inv., Ltd.*, 245 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Trelltex, Inc.*, 494 S.W.3d at 790. To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Potcinske*, 245 S.W.3d at 529.

## B. GUARANTY & PERSONAL LIABILITY

Jallan first argues that there is legally insufficient evidence that he is personally liable to PNA pursuant to a personal guaranty because there was no meeting of the minds between the parties.

A guaranty agreement creates a secondary obligation whereby the guarantor promises to be responsible for the debt of another and may be called upon to perform if the primary obligor fails to perform. *Abel v. Alexander Oil Co.*, 474 S.W.3d 795, 800–01 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Wasserberg v. Flooring Servs. of Tex., LLC*, 376 S.W.3d 202, 205–06 (Tex. App.—Houston [14th Dist.] 2012, no pet.). To recover under a guaranty contract, a party must show proof of (1) the existence and ownership of the guaranty contract; (2) the

terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. *Abel*, 474 S.W.3d at 800.

According to the rule of strictissimi juris, a guarantor may require that the terms of his guaranty be strictly followed, and that the agreement not be extended beyond its precise terms by construction or implication. *Id.*; *see McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971). Before we can apply the rule of strictissimi juris, however, we must examine the terms of the guaranty based on the language of the contract. *Abel*, 474 S.W.3d at 800. "Furthermore, agreements executed at the same time, with the same purpose, and as part of the same transaction, are construed together." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). The interpretation of a guaranty is a question of law we review de novo. *Abel*, 474 S.W.3d at 800; *see Gulf Ins. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).

The trial court found that "[t]he personal guarantee was attached and affixed to a Lease Agreement dated July 1, 2006 . . . ." On appeal, Jallan does not argue that the personal guarantee was not attached to the lease agreement. Virani testified that the lease and the guaranty documents were executed together and there was no evidence or testimony to the contrary. Additionally, the guaranty states that it incorporates the lease agreement for all purposes. Accordingly, we construe these documents together. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135; *In re Raymond James & Assocs., Inc.*, 196 S.W.3d 311, 320 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) ("When one document is incorporated into another by reference, the two documents must be construed together."); *see also McKnight*, 463 S.W.2d at 430 ("After the terms of a guaranty agreement have been ascertained, the rule of strictissimi juris applies, meaning that the guarantor is

entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract.").

Jallan argues that the differing dates indicate there was not a meeting of the minds between the parties. This argument implicitly challenges the sufficiency of the evidence of the trial court's finding that Jallan and PNA entered into a valid and enforceable lease agreement.

The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n. 21 (Tex. 2018); *Tyco Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 771 (Tex. App.—Houston [1st Dist.] 2012), *aff'd*, 432 S.W.3d 885 (Tex. 2014). In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To determine the parties' intent, we review the entire agreement and supply the terms obviously intended. *Ussery Invs. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 593 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd); *see also Waterford Harbor Master Assoc. v. Landolt*, No. 14-13-00817-CV, 2015 WL 293262, at *4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2015, pet. denied) (mem. op.). When a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous and the court construes it as a matter of law. *Coker*, 650 S.W.2d at 393.

When interpreting a contract, we also examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d

223, 229 (Tex. 2003). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Webster*, 128 S.W.3d at 229. If we are unable to harmonize the provisions and give effect to all its clauses, then the contract is susceptible to more than one reasonable interpretation and is thus ambiguous. *See Frost Nat'l Bank*, 165 S.W.3d at 312.

If a contract is susceptible to two constructions, one of which would render it valid and the other invalid, then the construction validating it must prevail. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979). Thus, for example, courts will construe a contract in favor of mutuality of obligation. *See Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970). Additionally, courts construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank*, 165 S.W.3d at 311; *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

Here, while the lease is dated July 1, 2006, the guaranty in the record states that it "is attached and affixed to a Lease Agreement dated June 1, 2006." The guaranty states that the "guarantee is extended as an inducement and in consideration of [PNA] entering into said lease agreement with [Parkway], which [PNA] would not otherwise do." This is some evidence supporting the trial court's implicit finding that there was a meeting of the minds and its explicit findings that the personal guarantee was attached and affixed to the lease. *See City of Keller*, 168 S.W.3d at 807. After examining the entire agreement as a whole in an effort to harmonize and give effect to the guaranty, we conclude that "June 1" in the lease agreement is an error and it may be interpreted as a matter of law as covering the lease agreement dated July 1. *See Health United Fam. Care, Inc. v. GFIC Mgmt.,*

*Inc.*, No. 01-98-01196-CV, 2001 WL 395004, at *3 (Tex. App.—Houston [1st Dist.] Apr. 19, 2001, pet. denied) (mem. op.) ("Under these circumstances, holding appellants liable to appellee on the guaranty does not alter or extend the terms of the guaranty, but gives effect to the original intention of the parties."); *see also, e.g.*, *White v. Harrison*, 390 S.W.3d 666, 678–79 (Tex. App.—Dallas 2012, no pet.) ("We conclude the reference to different street addresses in the Lease and Guaranty is an obvious mistake and that the documents evidence a clear intent that White be the personal guarantor of VSC's obligations under the Lease."). Accordingly, we conclude that there is legally sufficient evidence that the guaranty is a valid and enforceable agreement and that, pursuant to the terms of the guaranty, Jallan is personally liable for all amounts owed by Parkway. *See City of Keller*, 168 S.W.3d at 807.

Jallan also argues that the guaranty cannot be enforced because it was executed prior to the lease it purports to guarantee. However, Jallan cites no authority in support of this argument. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record."). Accordingly, we reject this argument.

We overrule Jallan's first issue.

## C.    $500,000.00 DAMAGES AWARD

In his second issue, Jallan argues that the $500,000.00 award to PNA is supported by legally and factually insufficient evidence because "[n]o evidence of probative value was admitted to support $500,000 in damages" and because the lease agreement fails to comply with Texas Property Code § 93.012.[5]

---

[5] Jallan does not argue that the damages are not recoverable under PNA's breach of contract claim, nor does he present any discussion or analysis concerning the damages recoverable in a breach of contract cause of action. *See* Tex. R. App. P 38.1(i). Jallan simply

## 1.    Evidence of Damages

The trial court found that "[u]nder the lease, Parkway owes PNA $500,000.00 for repairing, altering, renovating, partitioning, enlarging, remodeling or otherwise putting the Premises into a condition acceptable to and reasonably necessary to obtain new tenants and/or for the cost of reletting the premises."

The lease provides:

11.3 Upon termination of this Lease in any manner above provided, or by summary proceedings or otherwise, Tenant shall pay to Landlord forthwith, without demand or notice, the sum of the following:

. . .

(b) the cost of making all repairs, alterations and improvements required to be made by Tenant hereunder, and of performing all covenants of Tenant relating to the condition of the Premises during the term and upon expiration or sooner termination of this Lease;

. . .

Landlord shall also recover the cost and expenses, including but not limited to reasonable attorney and broker fees and expenses, paid or incurred by Landlord in connection with:

. . .

(iii) care, maintenance and repair of the Premises while vacant;

*(iv) reletting the whole or any part of the Premises (which reletting may be for a period or period's of time less than the unexpired term hereof or extending beyond the term hereof)*;

*(v) repairing, altering, renovating, partitioning, enlarging, remodeling or otherwise putting the Premises, either separately or as a part of larger Premises, into condition acceptable to and reasonably necessary to obtain new tenants.*

Such costs and expenses shall be deemed prima facie to be the amounts thereof invoiced to the Landlord or actually expended or incurred therefore by Landlord, if reasonably necessary to restore the

---

argues there is insufficient evidence to support the award of $500,000.00 in damages to PNA.

11

property to the condition at time of tenant's initial occupancy. (emphasis added).

Here, Virani testified that when the premises were leased to Parkway, the property was in great shape and all the equipment needed for its operation was in working condition. Virani testified that after Parkway left the premises, the property needed substantial repairs, as Parkway took out all of the equipment and left what was broken and inoperable. Virani explained that the equipment and fixtures that Parkway removed when it vacated the premises belonged to PNA. The premises were left in need of replacements or repairs to the coffee machine, counter registers, counter rack, deli equipment, car wash, air conditioning unit, gas pumps, walk-in cooler, roof equipment, fountain drink machine, registers, deli equipment, drive-thru menu board, telephone system, environmental tank system, freezers, compressors, and built-in computers.

Virani testified that PNA's subsequent tenant, 7-Eleven, conditioned its lease with PNA on a complete remodel and remediation of the store. Virani explained that 7-Eleven requested that PNA pay $500,000.00 for 7-Eleven to repair, remodel, and remediate the store from the condition Parkway left it in and in order for PNA to obtain 7-Eleven as its new tenant.

We conclude there is legally sufficient evidence that PNA incurred $500,000.00 in damages from the condition of the premises after Parkway vacated them. *See City of Keller*, 168 S.W.3d at 807.

Next, Jallan argues that the evidence supporting the $500,000.00 damages award is factually insufficient because none of Virani's testimony concerning the $521,000.00 in costs for the replacement and repairs of certain items is supported by any actual evidence. Contrary to Jallan's argument, Virani's testimony that PNA had to pay 7-Eleven $500,000.00 to remodel and repair the premises in order

12

to become PNA's new tenant is supported by the lease between 7-Eleven and PNA and Virani's testimony that he wrote a check to 7-Eleven for that amount. Viewing all of the evidence in the record, we conclude that the evidence is factually sufficient to support the $500,000.00 damage award. *See Ellis*, 971 S.W.2d at 407; *Barnhart*, 459 S.W.3d at 745.

Finally, Jallan argues that PNA did not designate Virani as an expert witness. However, the evidence underlying the $500,000.00 damage award was not introduced as expert testimony produced by Virani. Thus, we reject this argument.

In its reply brief, Jallan argues that the $500,000.00 award cannot be supported by the evidence that PNA paid $500,000.00 to 7-Eleven to remodel and repair the premises. However, in its appellate brief, Jallan only challenged the evidence provided by Virani for the cost of repairs and replacements, independent of the evidence that PNA paid $500,000.00 to 7-Eleven repairing and renovating the premises so that it could be leased to 7-Eleven. Accordingly, this argument has been waived. *See Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 495 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Arguments raised for the first time in a reply brief are waived."); *see also Hagberg v. City of Pasadena*, 224 S.W.3d 477, 481 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("[W]hen a judgment or order may have been based upon grounds not challenged on appeal, a court of appeals must normally affirm."); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Generally speaking, an appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment.").

## 2.    Texas Property Code § 93.012

Jallan also argues under his second issue that the evidence supporting the $500,000.00 damage award is legally and factually insufficient because the lease

agreement fails to comply with Texas Property Code § 93.012, which provides:

> (a) A landlord may not assess a charge, excluding a charge for rent or physical damage to the leased premises, to a tenant unless the amount of the charge or the method by which the charge is to be computed is stated in the lease, an exhibit or attachment that is part of the lease, or an amendment to the lease.
>
> (b) This section does not affect a landlord's right to assess a charge or obtain a remedy allowed under a statute or common law.

Tex. Prop. Code Ann. § 93.012(a)–(b).

Jallan argues that the lease agreement here "wholly fails to state how the claimed charges should be computed" "or adequately define what a 'reasonable and necessary' amount would be," in contravention of § 93.012(a). However, Virani's testimony is clear that the $500,000.00 it paid to 7-Eleven is rooted on physical damages to the premises caused by Parkway. *See id.* Thus, based on the plain language of the statute, § 93.012 does not apply to the $500,000.00 award. *See id.* ("A landlord may not assess a charge, *excluding a charge for . . . physical damage to the leased premises . . . .*") (emphasis added).

We overrule Jallan's second issue.

### 3.    Causation

In his third issue, Jallan argues there is insufficient evidence that Parkway's breach of the contract caused PNA $500,000.00 in damages, citing a single case from the Dallas Court of Appeals. *See Curtis v. AGF Spring Creek/Coit II, Ltd.*, 410 S.W.3d 511, 519 (Tex. App.—Dallas 2013, no pet.). In *Curtis*, the Dallas Court reversed an award of damages on the basis that there was nothing in the record to support a finding that the amount of damages was caused by the defendant's breach. *Id.* Unlike *Curtis*, here Virani testified that the $500,000.00 in damages was caused by Parkway when it left the premises in disrepair and PNA

14

had to pay 7-Eleven to repair and remodel the premises. The lease provides that Parkway was to return the premises in the same condition as it received them, and Virani testified that Parkway did not and that Parkway removed all of the equipment from the property. The lease further provided that PNA was to recover from Parkway the cost of repairing the premises in order to obtain a new tenant. Accordingly, we reject Jallan's reliance on *Curtis* and overrule his third issue.

## D.    $126,000.00 AWARD FOR RENT AND "NNN" EXPENSES

In his fourth issue, Jallan argues there is insufficient evidence supporting the $126,000 damage award for rent and NNN expenses.[6]

The trial court found that Parkway agreed to pay $11,000.00 in rent during months 121 to 180 of the lease and that "NNN expenses at the time of the default were $3,000.00 per month." The trial court further found that "Parkway owes PNA $126,000.00 for rent and NNN expenses ($14,000.00 x 9 months)." The lease provides:

> 11.3 Upon termination of this Lease in any manner above provided, or by summary proceedings or otherwise, Tenant shall pay to Landlord forthwith, without demand or notice, the sum of the following:
>
> . . .
>
> (c) an amount equal to "liquidated damages" or "indemnity payments", as Landlord elects, determined and payable as set forth below. . . . "Indemnity payments" means all the rent and other payments reserved under this Lease which would have come due and owing hereunder, from time to time, during the unexpired term less, to the extent not previously deducted or credited, the rent and other payments actually collected and allocable to the Premises or to the portions thereof relet by the Landlord.

Here, PNA elected to collect indemnity payments under the lease. Parkway's

---

[6] "NNN" expenses are defined in the lease as taxes, insurance, utilities, maintenance, and all other operating costs.

monthly rent was $11,000.00, and it was obligated under the lease to pay operating costs, including taxes, insurance, and utilities, as well as a late fee of $500. In 2019, the Harris County taxes on the property were $11,613.37. The Clear Creek Independent School System taxes on the property were $15,544.62 This totals $27,157.99 per year in taxes, which equals $2,263.17 per month. There is also a utility bill for March 19, 2019, through April 19, 2019, totaling $1,356.66. The amount of taxes due per month in March 2019 ($2,263.17), plus the utility bill for the period of March 19 through April 19 ($1,356.66), plus the amount of monthly rent ($11,000.00) is $14,619.83, which is greater than the $14,000.00 found by the trial court. We conclude there is legally sufficient evidence supporting the trial court's findings that "NNN" expenses at the time of the default were $3,000.00 per month."

While Jallan asserts that the evidence is factually insufficient, Jallan presents no discussion or analysis on appeal explaining why the evidence in the record is factually insufficient to support this finding by the trial court, and we decline to make arguments for Jallan. *See* Tex. R. App. P. 38.1(i); *Ryan v. Abdel-Salam*, 39 S.W.3d 332, 336 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("When a party fails to include any citation of authority or discussion of relevant facts to support its sufficiency contention, 'we will not perform an independent review of the record and applicable law to determine whether the error complained of occurred.'" (quoting *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex. App.—Houston [1st Dist.] 1995, no writ))); *see also Fredonia State Bank v. Gen. Am. Life Ins.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Bruce v. Cauthen*, 515 S.W.3d 495, 513 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (concluding that appellant waived a challenge to the factual sufficiency of the evidence because appellant

failed to direct the court to any record evidence or provide any analysis explaining how the evidence presented was factually insufficient).

We overrule Parkway's fourth issue.

### E.    DUTY TO MITIGATE DAMAGES

In his fifth issue, Jallan argues the trial court erred in finding that PNA satisfied its duty to mitigate damages. As such, Jallan argues, "the damages should be reversed accordingly."

"A landlord has a duty to mitigate damages if a tenant abandons the leased premises in violation of the lease." Tex. Prop. Code Ann. § 91.006(a). This duty requires that the landlord use objectively reasonable efforts to re-lease the premises when the tenant vacates in breach of the lease, and it is an affirmative defense that the defendant tenant must plead. *See Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299–300 (Tex. 1997). The landlord's failure to use reasonable efforts to mitigate damages bars the landlord's recovery against the breaching tenant only to the extent that damages reasonably could have been avoided. *See id.* The tenant bears the burden of proving both the landlord's failure to mitigate and the amount by which the landlord could have reduced his damages but for that failure. *See id.*; *Cole Chem. & Distrib., Inc. v. Gowing*, 228 S.W.3d 684, 687 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Here, even if PNA failed to mitigate its damages, Jallan failed to prove the amount by which PNA could have reduced its damages and failed to cite any evidence or provide any argument in support of the amount by which PNA could have reduced its damages. Accordingly, we reject Jallan's argument that the damages should be reversed. *See Cole Chem. & Distributing, Inc.*, 228 S.W.3d at 687 ("We need not determine whether the trial court erred in finding that Cole did

not make reasonable efforts to mitigate because we conclude that even assuming Cole's efforts were inadequate, Gowing failed to prove the amount of damages that could have been avoided if Cole had mitigated.").

We overrule Jallan's fifth issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

/s/ Margaret "Meg" Poissant
Justice

Panel consists of Justices Spain, Poissant, and Wilson.